# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY JOHNSON, CHAVONNE NEWMAN, his wife, and GREGORY JOHNSON and CHAVONNE NEWMAN, individually<br>    Plaintiffs,<br><br>    v.<br><br>POLICE OFFICER JAMES CILLO, individually and in his official capacities as a police officer of the Aliquippa Police Department, POLICE OFFICER JOHN COCHRAN individually and in his official capacity as a police officer of the Aliquippa Police Department, SGT. NEAL NICHOLSON individually and in his official capacity as a police officer of the Aliquippa Police Department, CHIEF DONALD COUCH, JR. individually and in his official capacity as a police chief of the Aliquippa Police Department, CITY OF ALIQUIPPA,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 17-646<br><br>Magistrate Judge Robert C. Mitchell |

## **OPINION**

Presently pending before the Court is a Motion to Dismiss Complaint in Part (ECF No. 2), with brief in support (ECF No. 3), filed by Police Officer James Cillo, Police Officer John Cochran, Police Sergeant Neal Nicholson, Police Chief Donald Couch, Jr., and the City of Aliquippa, collectively, "Defendants". For the reasons that follow, we will grant Defendants' motion to dismiss in part and dismiss the complaint as to Counts II, III (except as against Defendants Cillo and Nicholson), IV, V, and VI.

**Facts**

Plaintiffs allege the following facts in their amended complaint. In the early morning hours of June 17, 2016, Plaintiff Gregory Johnson was arrested in the Plan 12 neighborhood of Aliquippa, Beaver County, Pennsylvania, and charged at two separate docket numbers with the summary offenses of public intoxication, 18 Pa.C.S. § 5505 (MJ-36304-NT-0000361-2016), and disorderly conduct – unreasonable noise, 18 Pa.C.S. § 5503(a)(2) (MJ-36304-NT-0000362-2016). (ECF No. 7-1 ¶ 15). Plaintiff was transported to a holding cell at the Aliquippa police station and was released from custody later that morning. (ECF No. 7-1 ¶ 16). While signing his release paperwork, Plaintiff Johnson, still intoxicated, began an argument with his wife, Plaintiff Chavonne Newman, who had arrived to pick him up from the police station. (ECF No. 7-1 ¶¶ 21-24). Also present in the release area were Defendants Cillo, Cochran, and Nicholson. (ECF No. 7-1 ¶ 20). During the argument between Plaintiffs Johnson and Newman, Defendant Cillo grabbed Plaintiff Johnson by the neck, threw him against a wall, and forced him to the ground, causing injury. (ECF No. 7-1 ¶ 26). Defendant Nicholson caused further injury by striking Plaintiff in the face with his knee while Plaintiff was on the ground. (ECF No. 7-1 ¶ 27). While this was occurring, Defendant Cochran drew his Taser and aimed it at Plaintiff. (ECF No. 7-1 ¶ 28). The Aliquippa police station is outfitted with cameras, which captured video of the incident. (ECF No. 7-1 ¶ 17). As a result of his encounter with the officers at the Aliquippa police station, Plaintiff Johnson alleges he suffered physical and psychological injury (ECF No. 7-1 ¶ 48) and has sustained damages including pain and suffering, mental anguish, medical expenses, and reduced earning capacity (ECF No. 7-1 ¶ 49).

On June 17, 2016, a criminal complaint was filed against Plaintiff Johnson by Defendant Nicholson at case number MJ-36304-CR-0000251-2016, charging Plaintiff Johnson with one

count of aggravated assault of a police officer, 18 Pa.C.S. §2702(a)(3). (ECF No. 7-1 ¶ 53).[1] The criminal complaint identified Defendant Cillo as the alleged victim of this offense. Appended to the criminal complaint was an affidavit of probable cause which alleged the following.

> On 6-17-2016 at approximately 0445 hours [Plaintiff Johnson] was being released from the Aliquippa Police Department to his wife, as a result of being arrested for two summary offenses.
>
> During Johnson's release he became physically and verbally aggressive towards his wife. Officers intervened and attempted to place Johnson back into his cell. Johnson became more physically and verbally aggressive towards officers by posturing in a fighting stance and shouting. Johnson refused several times to listen to officers['] verbal commands.
>
> During officers['] attempts to place [Plaintiff] back into his cell, Johnson became physically aggressive with officers by attempting to grab and push officers. At that time officers were required to use physical force to subdue Johnson. Johnson obtained injuries to his face as a result of officers using physical force to subdue him.
>
> Johnson was transported to the Beaver Valley Medical Center for evaluation/treatment.

(ECF No. 7-1 ¶ 43).

Plaintiff's preliminary hearing on the assault charge was continued twice and, on July 22, 2016, the charge was withdrawn by the Beaver County District Attorney's Office. (ECF No. 7-1 ¶ 53a; ECF No. 1, Ex. 5). On July 29, 2016, two non-traffic citations were filed against Plaintiff Johnson, charging him with one count each of harassment, (MJ-36304-NT-0000423-2016 and MJ-36304-NT-0000424-2016). (ECF No. 7-1 ¶¶ 54, 55; ECF No. 1, Ex. 4). These citations were filed by Defendant Cochran. The named victims with respect to these charges were Plaintiff Newman

---

[1] Page 10 of Plaintiffs' amended complaint contains two paragraphs labeled "52" and two labeled "53." This Court will refer to the first paragraphs in sequence as 52 and 53 and the second set of paragraphs as 52(a) and 53(a). Similarly, Plaintiffs' amended complaint contains duplicative sets of paragraphs 82-88. This Court will refer to the first paragraphs in sequence as 82-88 and the second set of paragraphs as 82(a), 83(a), et seq.

and Defendant Cillo, respectively. Id. The docket sheet notes that the harassment charges were eventually changed to the summary offenses of public drunkenness and disorderly conduct. (ECF No. 1, Ex. 3). On September 29, 2016, Plaintiff pled guilty before a county magistrate to four offenses at four separate docket numbers. (ECF No. 1, Ex. 3).

- 361-2016: public drunkenness, 18 Pa.C.S. § 5505
- 362-2016: disorderly conduct – unreasonable noise, 18 Pa.C.S. § 5503(a)(2)
- 423-2016: disorderly conduct – unreasonable noise, 18 Pa.C.S. § 5503(a)(2)
- 424-2016: public drunkenness, 18 Pa.C.S. § 5505

**Procedural History**

Plaintiffs filed their original complaint on May 17, 2017 (ECF No. 1). On July 17, 2017, Defendants filed a motion to dismiss Plaintiffs' complaint in part, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (ECF No. 2), and a brief in support thereof. (ECF No. 3). Plaintiffs have filed a response (ECF No.7) and brief in opposition (ECF No. 8) with an amended complaint (ECF No.7-1) and Defendants have filed a reply (ECF No. 10). In their amended complaint, Plaintiffs assert claims of excessive force pursuant to 42 U.S.C. § 1983 and a 42 U.S.C. § 1985 claim of conspiracy to commit the same. Plaintiffs also allege supplemental state law claims of battery (Amended Complaint Count I), malicious prosecution (Amended Complaint Count V), and abuse of process (Amended Complaint Count VI). Additionally, Plaintiff Newman has filed a derivative claim of loss of consortium (Amended Complaint Count VII).

We have jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. The parties have consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c) (ECF No. 9).

**Standard of Review**

A defendant moving to dismiss under Fed. R. Civ. P. 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief. See Fed. R. Civ. P. 12(b)(6); *see also, e.g.*, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court opinions in Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007) and, more recently, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), have shifted pleading standards from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss. With the Supreme Court instruction in mind, the Court of Appeals for the Third Circuit has outlined a two-part analysis that courts should utilize when deciding a motion to dismiss for failure to state a claim. First, the factual and legal elements of a claim should be separated. In other words, while courts must accept all of the complaint's well-pleaded facts as true, they may disregard any legal conclusions. Second, courts then decide whether the facts alleged in the complaint are sufficient to demonstrate that the plaintiff has a "plausible claim for relief." Iqbal, 129 S.Ct. at 1950. That is, a complaint must do more than allege the entitlement to relief; its facts must show such an entitlement. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–211 (3d Cir.2009). Further, we are mindful that, "[t]o decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record...." Pension Benefit Guaranty Corp. v. White Consolidated Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).

With this standard in mind, we turn to the allegations of the Amended Complaint.

**Discussion**

Defendants ask this Court to enter an order dismissing all counts contained in Plaintiffs' Complaint, with the exception of battery (Count I) and excessive force (Count III) against

5

Defendants Cillo and Nicholson. (ECF No. 2, 10).[2] Defendants offer the following arguments with respect to the remaining counts: (1) the clams raised against the individual defendants in their official capacities should be dismissed as duplicative of those asserted against the City of Aliquippa; (2) Plaintiffs have failed to establish a Monell[3] theory of liability based on any policy, custom, or practice of the City or its police force; (3) Plaintiffs have failed to set forth facts from which a conspiracy under section 1985 may be plausibly inferred; (4) Plaintiffs' claim of malicious prosecution is barred under the doctrine of Heck v. Humphrey[4]; (5) Plaintiffs have failed to produce evidence supporting a cause of action for abuse of process; (6) Plaintiffs' claims under the Eighth Amendment are not cognizable because the Amendment only applies to convicted prisoners; (7) Plaintiffs have failed to plead facts sufficient to demonstrate a violation of a liberty interest protected by the Fourteenth Amendment; (8) Plaintiffs' state law claims against the City of Aliquippa are barred by the immunity provisions of the Political Subdivision Tort Claims Act; (9) Plaintiffs have failed to state a clam for intentional infliction of emotional distress; and (10) Plaintiffs' claims for punitive damages and attorney's fees in relation to this action should be dismissed. (ECF No. 2 ¶¶ 5-15).

In response, Plaintiffs have amended their complaint to (1) "remove mention" of the Eighth and Fourteenth[5] Amendments (ECF No. 8, at pg. 9); (2) remove the City of Aliquippa as a

---

[2] Defendants present no argument with respect to Plaintiff Newman's derivative loss of consortium claim (Count VII).

[3] Monell v. New York City Department of Social Services, 436 U.S. 658 (1978).

[4] Heck v. Humphrey, 512 U.S. 477 (1994).

[5] We note that, despite Plaintiffs' assertions, the amended complaint contains allegations that Defendants violated Plaintiff Johnson's rights under the Fourteenth Amendment (ECF 7-1, at ¶ 82). Defendants are correct that Plaintiffs have failed to assert in their amended complaint any substantive due process claims and have instead alleged violation of rights conferred by the Fourth

6

defendant from Counts V-VII (ECF No. 8, at pg. 10); (3) exclude the intentional infliction of emotional distress claims without prejudice (ECF No. 8, at pg. 11) and; (4) address Defendants' concerns about the punitive damages and attorney's fees. Id. With respect to the remaining arguments, Plaintiffs assert that (1) the claim for malicious prosecution survives the motion because the conduct to which Plaintiff Johnson pled guilty was not related to the incident at the Aliquippa police station and (2) the complaint pled sufficient facts in support of his §§ 1983 and 1985 claims, as well as for the state court claim of abuse of process. (ECF No. 8, at pg. 6-11).[6] Thus, Plaintiffs ask this Court to deny Defendants' motion, and request leave to amend their complaint should this Court determine that it is deficient. (ECF No. 8, at pg. 8, 9).

I. *Duplicative Claims*

Defendants first assert that the official-capacity claims against Officer Cillo, Officer Cochran, Sergeant Nicholson, and Chief Couch should be dismissed as duplicative of the claims asserted against the City of Aliquippa at Counts II, III, and IV of the amended complaint. (ECF No. 3, at pg. 22); see also ECF No. 7-1 ¶¶ 10, 79-88, 84-83(a), 84(a)-88(a). Defendants are correct that this court may dismiss claims against public officials in their official capacity where the government entity is also named as a defendant "because a lawsuit against public [officials] in their official capacities is functionally a suit against the public entity that employs them." Cuvo v.

---

Amendment. Our Supreme Court has held that, while not "all constitutional claims relating to physically abusive government conduct must arise under either the Fourth or Eighth Amendments … if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n. 7 (1997) quoting Graham v. Connor, 490 U.S. 386, 394 (1989). Accordingly, even if Plaintiffs have not withdrawn their alleged Fourteenth Amendment claims, such claims are dismissed.

[6] Plaintiffs have not responded to any of Defendants' remaining arguments.

De Biasi, 169 F. App'x 688, 693 (3d Cir. 2006) (citation omitted). Here, inclusion of the individual defendants in their official capacities with respect to Counts II, III, and IV is redundant. Kentucky v. Graham, 473 U.S. 159, 165–66 (1985). Accordingly, the Court will grant the Defendants' motion in this regard, thereby "simplifying the litigation in a way that does not cause any prejudice to plaintiffs." See Blunt v. Lower Merion Sch. Dist., 559 F.Supp.2d 548, 568 (E.D. Pa. 2008).

II.  *Section 1983 Liability for the City of Aliquippa Under Monell*

Defendants next argue that this Court should dismiss Count III against the City of Aliquippa, arguing that Plaintiffs have failed to establish a plausible claim for municipal liability under Monell.

Section 1983 provides as follows.

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

The Supreme Court has held that § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). It is well-settled that

> a local government may not be sued under § 1983 for any injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury that the government as an entity is responsible under § 1983.

Monell v. Department of Social Servs. of City of N.Y., 436 U.S. 658, 694 (1978) (citations and quotation marks omitted).

In order to sustain a claim under Monell, a plaintiff must first establish "that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir.1990). "Determining who is an official possessing final authority to establish municipal policy is not a question of fact, but a question of state law." Boyden v. Twp. of Upper Darby, 5 F. Supp. 3d 731, 742 (E.D. Pa. 2014), citing City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988). Here, the amended complaint fails to allege any policy-making authority attributable to the individual officers, or any evidence that would plausibly suggest Officers Cillo and Cochran and/or Sergeant Nicholson has final discretion over matters of policy. Further, with respect to Police Chief Couch, the Court of Appeals has explained that "as a matter of Pennsylvania state law, a township Police Chief is not a final policymaker." Santiago v. Warminster Twp., 629 F.3d 121, 135 n. 11 (3d Cir. 2010).

Additionally, in order to survive Defendant's motion to dismiss, Plaintiffs must have set forth facts sufficient to establish a custom or policy[7] of the City of Aliquippa. "Custom … can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Bielevicz, 915 F.2d at 850. See also McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009) ("To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was."). Further, a plaintiff seeking to establish liability pursuant to Monell must establish causation by properly pleading that the municipality's policy or custom "was the source of [his or] her injury." Santiago, 629 F.3d at 135.

---

[7] Here, Plaintiffs have failed to allege existence of a formally-enacted policy; thus, the Court will confine its analysis to whether the complaint pleads sufficiently facts to establish a custom of excessive force.

Plaintiffs' allegations of custom can be broken into four broad categories: (1) deliberate indifference by the City of Aliquippa to the constitutional rights of its citizens, (2) deliberate indifference to the "obvious" need to train its employees in the use of excessive force, (3) promotion and allowance of the use of battery and other constitutional violations as "a means to control the public," and (4) promotion of a policy of filing erroneous charges. (ECF 7-1 ¶ 88). However, these vague assertions are insufficient to plead the existence of a custom, that is, Plaintiffs have failed to allege that the complained of conduct is "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" Praprotnik, 485 U.S. at 127 (citation omitted). Although we accept as true Plaintiff's well-pleaded factual allegations regarding his injuries, the amended complaint fails to plead sufficiently any facts to support the existence of a custom related to those injuries, nor do Plaintiffs assert any allegations with respect to causation, "*i.e.*, that, policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to [plaintiffs'] injury." Bielevicz, 915 F.2d at 851. Coupled with Plaintiffs' failure to identify a municipal policymaker, this claim fails.

Therefore, Plaintiffs' § 1983 claims will be dismissed for failure to plead facts sufficient to establish a municipal policymakers conduct as contemplated by Monell.) McTernan, 564 F.3d at 658 (holding that a plaintiff's failure "to allege conduct by a municipal decisionmaker" is "fatal" to a Monell claim.).

To the extent that Plaintiffs allege that the City of Aliquippa failed to train its officers properly (ECF 7-1 ¶ 85-87), the Court notes the following. The Court of Appeals has held that:

> Under 42 U.S.C. § 1983 [], a municipality may be liable for the failure to train its employees only where that failure amounts to deliberate indifference to the

> [constitutional] rights of persons with whom the police come in contact. In other words, a municipality can only be liable under § 1983 where the failure to train demonstrates a "deliberate" or "conscious" choice by the municipality. To determine whether a municipality's alleged failure to train its employees amounted to a deliberate or conscious choice, it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.
>
> Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury, meaning that the plaintiff must prove that the deficiency in training actually caused [the constitutional violation at issue].

Doe v. Luzerne County, 660 F.3d 169, 179-80 (3d Cir. 2011) (citations and quotation marks omitted).

Although Plaintiffs allege that the City failed to train its employees (1) as to the procedures "for effectuating arrests so as to avoid the use of excessive force," (2) "on how to handle situations where a person is arrested/controlled at the police station," and (3) on procedures "which promote[] de-escalation" in various situations (ECF 7-1 ¶88), Plaintiffs are still required to allege the existence of a policy or custom in order to maintain this claim. See Vargas v. City of Philadelphia, 783 F.3d 962, 974 (3d Cir. 2015). Plaintiffs have failed to do so. Accordingly, for all of the forgoing reasons, Defendant's motion to dismiss Count III of the amended complaint is granted.

III.  *Claims Under 42 U.S.C. § 1985*[8]

> To maintain a § 1985 cause of action, a plaintiff must establish: (1) a conspiracy by the defendants; (2) that the conspiracy was designed to deprive plaintiff of the equal protection of the laws or equal privileges and immunities; (3) the commission of an overt act in furtherance of that conspiracy; (4) a resultant injury to person or property or a deprivation of any right or privilege of citizens;

---

[8] Plaintiffs have failed to specify the subsection of § 1985 upon which they rely. However, a reading of the statute and its subsections indicates that the factual allegations of the amended complaint would arguably only support a claim based upon § 1985(3). Accordingly, the Court will assume Plaintiffs intend to proceed under that subsection.

and (5) that defendants' actions were motivated by a racial or otherwise class-based invidiously discriminatory animus.

Litz v. Allentown, 896 F. Supp. 1401, 1414 (E.D. Pa. 1995).

Plaintiffs' amended complaint fails to set forth any specific allegations of an agreement to carry out the alleged deprivation of his rights. Moreover, absent from Plaintiffs' amended complaint is an allegation that such deprivation had a racially discriminatory animus. Accordingly, Defendants' motion to dismiss is granted with respect to Count IV of the amended complaint. See Pratt v. Thornburgh, 807 F.2d 355, 357 (3d Cir. 1986) ("As to the claim founded on 42 U.S.C. § 1985(3), we need only say that it was properly denied since it is not alleged that the conspiracy involved in that count was motivated by a racial or class-based animus.").

IV.  *Malicious Prosecution*

To prove malicious prosecution under [§] 1983, a plaintiff must show that:

(1) the defendants initiated a criminal proceeding;

(2) the criminal proceeding ended in plaintiff's favor;

(3) the proceeding was initiated without probable cause;

(4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and

(5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009) (citations and footnotes omitted).[9]

---

[9] Plaintiffs' claim of malicious prosecution is couched as a state law claim (ECF 7-1 ¶ 90); however, our analysis remains the same. See Albright v. Oliver, 510 U.S. 266, 271 n. 4 (1994) (recognizing that "the Third Circuit, …holds that the elements of a malicious prosecution action under § 1983 are the same as the common-law tort of malicious prosecution.")

12

Defendants contend that Plaintiffs have failed to meet their burden with respect to the second element, arguing that the underlying criminal proceedings did not terminate in Plaintiff Johnson's favor because the second set of public drunkenness and disorderly conduct charges to which Plaintiff pled guilty on September 29, 2017, arose from the incident at the Aliquippa police station, and not from the earlier incident for which he was initially arrested. Thus, Defendants argue, Count V of Plaintiffs' amended complaint must be dismissed pursuant to the rule outlined in <u>Heck</u>.

As the Third Circuit has explained,

> The purpose of the favorable termination requirement is to avoid "the possibility of the claimant [*sic*] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." <u>Heck</u> [] (alteration in original) (internal quotation marks omitted). Consistent with this purpose, we have held that a prior criminal case must have been disposed of in a way that indicates the innocence of the accused in order to satisfy the favorable termination element. <u>Donahue v. Gavin</u>, 280 F.3d 371, 383 (3d Cir. 2002); *see also* <u>Gilles v. Davis</u>, 427 F.3d 197, 211 (3d Cir. 2005) (holding that expungement under the Accelerated Rehabilitative Disposition program was not a favorable termination because the program "imposes several burdens upon the criminal defendant not consistent with innocence").
>
> Accordingly, a malicious prosecution claim cannot be predicated on an underlying criminal proceeding which terminated in a manner not indicative of the innocence of the accused. A plaintiff may attempt to indicate his innocence by demonstrating that his prior criminal proceeding terminated in one of the following ways:
>
> > (a) a discharge by a magistrate at a preliminary hearing, or
> >
> > (b) the refusal of a grand jury to indict, or
> >
> > (c) the formal abandonment of the proceedings by the public prosecutor, or
> >
> > (d) the quashing of an indictment or information, or
> >
> > (e) an acquittal, or

13

> (f) a final order in favor of the accused by a trial or appellate court.

> Donahue, 280 F.3d at 383 (internal quotation marks and emphasis omitted); accord Haefner v. Burkey, 534 Pa. 62, 626 A.2d 519, 521 (1993).

Kossler, 564 F.3d at 187 (footnotes and some quotation marks omitted).

The facts of the instant case are similar to those presented in Kossler. Kossler was arrested and charged with aggravated assault, disorderly conduct, and public intoxication following an interaction with police. The case proceeded to a non-jury trial in the Pennsylvania Court of Common Pleas, where he was acquitted of aggravated assault and public intoxication, but found guilty of the summary offense of disorderly conduct, and ordered to pay a fine. Kossler then filed a § 1983 action against the arresting officers. The District Court granted partial summary judgment in favor of the defendant officers on a number of Kossler's claims, including malicious prosecution. Prior to trial, the parties stipulated to the dismissal of all remaining counts with prejudice, and Kossler filed an appeal to the Third Circuit, arguing that the District Court had erred in granting summary judgment with respect to his claim of malicious prosecution.

The Circuit Court ruled, in a matter of first impression, that an acquittal on at least one criminal charge does not constitute "favorable termination" for the purpose of a subsequent malicious prosecution claim, where "the charge arose out of the same act for which the plaintiff was convicted on a different charge during the same criminal prosecution." Id. at 188. In so holding, the Court determined that the relevant consideration is the termination of the proceeding as a whole, as opposed to the individual charge. Id. The Court explained that "[w]hen the circumstances—both the offenses as stated in the statute and the underlying facts of the case—indicate that the judgment as a whole does not reflect the plaintiff's innocence, then the plaintiff fails to establish the favorable termination element." Id. Applying this standard, the Court

14

concluded that all three of the offenses for which Kossler was charged arose from the same conduct. Thus, because Kossler's case was not resolved favorably to him **as a whole**, the Court determined that he failed to establish the favorable termination element and his malicious prosecution claim failed as a result. Id. at 189-90.

Plaintiff Johnson maintains that he has met his burden , arguing that the guilty pleas he entered into on September 29, 2016, related to only his conduct at the Plan 12 neighborhood, for which he was originally charged. (ECF No. 7-1 ¶¶ 61, 64). However, contrary to Plaintiffs' arguments, the exhibits appended to the original complaint show that the proceedings surrounding the incident that occurred on June 17, 2016 in the Aliquippa police station did not terminate in his favor. The summary charges at case numbers 423-2016 and 424-2016 were filed a week after the aggravated assault charge (261-2016) was withdrawn by the Beaver County District Attorney. The offense date, time, location, named victims, and alleged conduct outlined in the Non-Traffic Citation Summons issued with respect to case numbers 423-2016 and 424-2016, respectively, are identical to those alleged in the affidavit of probable cause filed in connection with the withdrawn aggravated assault charge. On September 29, 2016, Plaintiff pled guilty to one summary offense at each docket number. (ECF No. 1 ¶43, Ex. 1-5).

Although here, as in Kossler, the summary offenses to which Plaintiff pled guilty are not lesser-included offenses of the felony of aggravated assault, nor do those crimes share common elements, we are mindful that "the analysis does not end by merely examining the relevant criminal statutes on their face, but rather requires an inquiry into the underlying conduct that the charges sought to punish." Kossler, 564 F.3d at 189. Accordingly, upon an examination of the entire criminal proceeding, the Court concludes that the charges to which Plaintiff pled guilty at case numbers 423-2016 and 424-2016 were predicated upon, and sought to punish, the same conduct

as the withdrawn aggravated assault charge.[10] In light of this determination, this Court holds that the underlying criminal proceeding did not terminate in Plaintiff Johnson's favor, consequentially, the claim fails. Further, as the Kossler Court explained, "[w]e do not need to apply Heck's test in the present case because when a malicious prosecution claim is brought under § 1983, it is barred simply for lack of favorable termination." Kossler, 564 F.3d at 190.

V. *Abusive Use of Process*

As Defendants correctly point out, Count VI of the amended complaint is legally insufficient. As this District Court has explained,

> [a]buse of process focuses on the misuse of civil process, which is properly issued upon probable cause, to achieve some object other than the legitimate purpose for which it is designed, as opposed to the wrongful initiation of legal proceedings without probable cause.

Muirhead v. Zucker, 726 F. Supp. 613, 617 (W.D. Pa. 1989). Plaintiffs' amended complaint alleges the wrongful fling of a criminal complaint, not the misuse of properly issued civil process. Moreover, even if Plaintiffs' claim was properly characterized, the tort of abuse of process requires the underlying proceedings to terminate in favor of the person against whom they are brought. See 42 Pa.C.S. § 8351(a)(2). Because Plaintiffs are unable to meet their burden in this regard, this claim fails.

VI. *Conclusion*

---

[10] It is immaterial to the Court's analysis that this case presents a situation where there are three separate charges filed at three separate docket numbers arising from the same conduct. Under Kossler the relevant inquiry, and result, remains the same. Moreover, the Court notes that although it can find no case formally adopting the relevant subsection, section 660 of the Restatement compels the same result. See Restatement (Second) of Torts § 660(d) (1977) ("A termination of criminal proceedings in favor of the accused other than by acquittal is not a sufficient termination to meet the requirements of a cause of action for malicious prosecution if … new proceedings for the same offense have been properly instituted and have not been terminated in favor of the accused.").

For the foregoing reasons, we grant Defendants' motion to dismiss with respect to all Counts with the exception of Count I, Count III as to Defendants Cillo and Nicholson, individually, and Count VII. Therefore, we dismiss with prejudice the remaining counts of the amended complaint. An appropriate order follows.

In their brief in opposition to Defendants' motion to dismiss, Plaintiffs' request leave to amend their complaint to further flesh out both the Monell claims and those raised under § 1985(3). (ECF No. 8, pg. 7-8, 9). In light of the disposition herein, this Court believes that amendment would be futile and denies the request. Rhymer v. Philip Morris, Inc., 164 F. App'x 268, 269 (3d Cir. 2006) (citations omitted) (reiterating that "a district court has discretion to deny a request to amend if it is apparent from the record that … the amendment would be futile[.]"). However, this determination does not limit Plaintiffs' ability to amend the remaining claims.

Dated: October 27, 2017 /s/ *Robert C. Mitchell*

                                                          ROBERT C. MITCHELL
                                                          United States Magistrate Judge

Cc: record counsel via CM-ECF

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY JOHNSON, CHAVONNE NEWMAN, his wife, and GREGORY JOHNSON and CHAVONNE NEWMAN, individually<br>        Plaintiffs,<br><br>        v.<br><br>POLICE OFFICER JAMES CILLO, individually and in his official capacities as a police officer of the Aliquippa Police Department, POLICE OFFICER JOHN COCHRAN individually and in his official capacity as a police officer of the Aliquippa Police Department, SGT. NEAL NICHOLSON individually and in his official capacity as a police officer of the Aliquippa Police Department, CHIEF DONALD COUCH, JR. individually and in his official capacity as a police chief of the Aliquippa Police Department, CITY OF ALIQUIPPA,<br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 17-646<br><br>Magistrate Judge Robert C. Mitchell |

## **ORDER**

AND NOW, to-wit, this 27th day of October 2017, for the reasons stated in the Opinion filed contemporaneously herewith, it is hereby ORDERED that Defendants' Motion to Dismiss Complaint in Part (ECF No. 2) be and the same hereby is GRANTED. Counts II, III (except as against Defendants Cillo and Nicholson), IV, V, and VI are hereby dismissed, with prejudice.

                                          /s/ *Robert C. Mitchell*
                                          ROBERT C. MITCHELL
                                          United States Magistrate Judge

Cc: record counsel via CM-ECF